Good morning. I'd like to reserve a couple of minutes for rebuttal, please. This case is very laden with facts, and we've extensively briefed the facts. I don't intend to go into those very much this morning in terms of what those facts are, but I did want to talk to the issue of the standard of review with regard to the facts. I think that's an important issue here. And we have contended from the outset that the findings of fact by the State court are not presumptively correct in this court if they have been determined without giving the petitioner an opportunity for an evidentiary hearing at the State court level. In other words, what's happened here is that the State – we asked for an evidentiary hearing all the way along the line. The trial court did not want to hear the ineffectiveness of counsel claim at all. We asked for an evidentiary hearing when we brought the companion habeas petition in the State court of appeals. They denied that. They heard the case without an evidentiary hearing, and then they made certain findings of fact. Now, we are contending that because we have diligently sought an evidentiary hearing and the State court refused to give it to us, that the AEDPA deference to State court findings of fact does not apply. And I cited to the case – I have been arguing this in terms of the old law, because if it doesn't apply, then we've got the old law. But there is a nice, fairly new case which I brought to the Court's attention, which lays this out very well, Taylor v. Maddox, 366 F. 3rd, 992. Now, they say in Taylor that you've got these two provisions about the facts. You've got D. 2, which says that the Federal Court can't grant relief unless it was based on an unreasonable determination of the facts in light of the evidence presented in State court. That's one provision regarding the facts. And then you've got this E. 1, which says that a determination of a factual issue made by a State court shall be presumed to be correct, and that this presumption of correctness may be rebutted only by clear and convincing evidence. Now, what Respondent does is they throw these two provisions together, and what I'm trying to do this morning is to convince the Court that we must separate them out. And the holding from Taylor v. Maddox that speaks to this is that basically they say you don't get to the second one, you don't get to this presumption of correctness until you first get past whether there's something fundamentally wrong with the procedure by which the State court determined the facts in the first place. And the holding is, significantly, the presumption of correctness and the clear and convincing standard of proof only come into play once the State court's fact findings survive any intrinsic challenge. They do not apply to a challenge that is governed by the deference implicit in the unreasonable determination standard. Now, Taylor cites for that principle another Ninth Circuit case. Mr. Russell, is it your position, then, that if the Petitioner states an ultimate fact in his petition sworn under penalty of perjury, that he was deprived the opportunity to prove that Villanueva did it rather than he? Yes, sir. And that was an effect of assistance of counsel. That fact ineluctably obliges the State court to grant an evidentiary hearing. When the accepting that fact is true, the only way that you can rebut the fact is with contrary evidence. You see, that's the kicker. In State court parlance, you apply a demerit test to it. There you go. If the words in the petition under oath create a factual scenario which a reasonable trier of fact would have to acquit on, in other words, another man did it, right? Yes, sir. What we used to call in the Hall of Justice the Saudi defense. But you wouldn't have to have an evidentiary hearing if the claim fact was cumulatively already before the jury, or even if the fact were true, there would be no prejudice. In other words, even though the fact is not again said, it wouldn't make any difference. Legally, it wouldn't make any difference. Yeah, it's got to be a material fact, clearly. Right. And we're not going to be dealing much with jury determinations because collateral review in California is undertaken for the first time after the jury speaks. In other words, these claims were never presented to the jury, and correctly so. But let me give you a good example of this. In other words, we brought up the idea somebody else did it. And Justice Bay, you know, says that's a pretty standard. No, no, Judge, there's no justice in my circuit. Judge Bay says that, forgive me for elevating you, says that they're, you know, that's a common defense. Now, here it's more specific. In other words, basically the fact here is that trial counsel was told before the trial that someone else did it. That's the fact. And there is a It doesn't really help you, man, does it? Well, it does. Because if trial counsel is told that someone else did it, then trial counsel has a duty to investigate that and to present that evidence to the jury because that's a defense. And what the Court does here is they simply find as a fact that trial counsel didn't – that trial counsel didn't know that. He wasn't told that. But there are declarations in the record by the Petitioner which establish quite clearly that he told trial counsel exactly that. Counsel, there are – as I understand it, there are about eight issues within this ineffective assistance argument. And you're asking for an evidentiary hearing. Now, is it with respect to a particular one of those eight or more than one? There's five that we still got. By the way, all eight were presented to the State – all the ones in this Court were presented to the State Court. Right. There weren't any new ones. But we did drop some. For instance, there wasn't a COA granted on the conflict of interest, so that's gone. Okay. Here are the five issues. The first one, that they didn't establish an alibi. It's Palma. That's the Palma thing. All right. Right. And we say on that one that the State court determined that Palma wasn't credible. But the State court couldn't do that because they hadn't held an evidentiary hearing to make that determination. And a reasonable explanation for why she didn't testify at the State court trial was the trial counsel didn't prepare her to do that. But wasn't – isn't that a finding, though? It's a finding. And it's a finding of fact. The thing is it's not entitled to the kind of deference that Respondent wants to give it. It's not some kind of presumptively true fact. Because? Because the fact was determined unreasonably, the unreasonableness being that in the State court, you have to assume that the facts are true, and you can't make credibility determinations. You can't do that without holding an evidentiary hearing. And the site for that is Nunez, which is 350 F. 3rd, 1045. And Nunez says straight out that if we – no matter how you view this, whether it's a question of the unreasonableness of the facts or it's an unreasonable determination of law, its assessment of the evidence went well beyond its self-assigned task of assessing Nunez's allegations for sufficiency to determine whether he was entitled to relief. With the State court having refused Nunez an evidentiary hearing, we need not, of course, defer to the State court factual findings. That is indeed how these stated findings should be characterized. Can the State court deal with a petition of this sort as if it were a law in motion matter and hear it on affidavits rather than give a hearing? They could. And they've done that in some cases, but they didn't do that here. Note that the only declarations on the facts are ours. There's no evidence presented in State court. There's not a single declaration except the declarations that we presented. There were no counter-declarations. Careful what you say, because there's no reason why the State trial court judge acting as a law in motion judge can't determine credibility from the affidavits themselves. There may be some implausible set of facts in the affidavits which make him mirror his eyes. Well, but if you've got one affidavit where the client is saying, I told the lawyer in June of 1995 that someone else did it, and you don't have any other declaration. See, if they brought in trial counsel and ---- But didn't he actually say, I told the lawyer that someone else did it, but I couldn't tell my lawyer who it was because Villanueva extracted a promise from me that I shouldn't snitch him out while he was saving money? There were two declarations. There was an initial one which was vague as to what he said, and then there was a second one that was much more specific. And it's the rebuttal declaration that we're relying on. Now, you can argue with us as to whether that's credible or not, but there's no question that in the rebuttal declaration he clearly stated, and it's in the record at pages paren 74 to paren 77, where we have the habeas corpus evidence presented in the record. And it's called the rebuttal declaration. And he explains that he told counsel twice. First of all, he said, you know, that he wouldn't state the name, but then the guy died and then he did go to counsel and tell him exactly who it was. And that happened a few weeks after June of 1995. But couldn't the trial court take those two declarations, read them side by side, and say, I don't believe Mr. Perez. I don't like his credibility. This is an implausible situation. There's no reason to have a hearing because this man is not credible. I think if you read Nunez that you will see that the answer is no. I say no. And I point the court to Nunez where it did exactly that with an ineffectiveness of counsel situation. It talked about the law. So your position is that nothing short of an evidentiary hearing at which witnesses are called and cross-examined will fulfill the constitutional requirements of AEDPA? If, A, you have a material fact, which if believed would grant relief. But you cannot determine that material fact on affidavits alone. Well, you. I mean, the trial court. No, you can. But you see, there were no counter-affidavits. So all they have to go on. I'll repeat. The affidavits, some affidavits, I think after a few years, you start seeing some affidavits which are so bizarre that they lack credibility without the necessity of rebuttal. If that's the position, that this affidavit is so bizarre that it's simply incredible and every reasonable jurist would so find it, then okay, they can make that determination. But if you look at Nunez and Maddox, that's not what they're talking about. They're talking about when you have a fact which, if true, would merit relief, and there's no counter-declarations back and forth, it's not like counsel came in here and said that's not true, that you have to have a hearing. Or if the fact is determined, it's not a fact that's entitled to deference. I mean, they may be right, but they may be wrong. Well, didn't the State court do just what was said was done? Read the papers and said this is incredible. Yeah, I don't buy it. I don't believe it. And I'm saying that if you look at these cases, you can't do that because we diligently ask for an evidentiary hearing. And that takes it out of AEDPA. Once you diligently ask for an evidentiary hearing and you do everything you can in State court to present the facts and they don't give you that hearing, we're back to pre-AEDPA law. And in pre-AEDPA law, the State findings aren't entitled to any presumption of correctness. Aren't we in a position where we have to look at what was before the State court judge and say he could reasonably make that determination that this was off the wall and I don't have to proceed to have an evidentiary hearing? There's two questions you ask, I think, as a Federal judge. The first one is, is this one of those facts that's entitled to the presumption of correctness? If we find that the State court judge looked at this and did not unreasonably say this is ridiculous, this is preposterous or, you know, I'm not going to credit it, I don't have to go to an evidentiary hearing. You cannot make credibility determinations except in the most egregious, obviously false situations. That's not the situation. That first question has to be answered in terms of you've – it's not a fact that's entitled to a presumption of correctness. Now, at the second level, you may decide that you personally believe that, as a Federal judge, that you don't buy the declarations, but we're talking de novo review for that kind of a finding. And it's important to look at the difference between them, because what the judge typically does here is he first says, all right, here's all these State court findings of fact, and they're entitled to presumption of correctness. That's why the State decision was right. And by the way, here's a whole bunch of new things that the State court never thought of, and here's some additional reasons for those. And what I'm saying is you have de novo review for all that new stuff, and you also have de novo review when the initial State court findings were made based upon improper credibility determinations. I mean, California has a law requiring that if a prima facie case is stated, you must have an evidentiary hearing. It's not very different than the principles applied in Federal court. But when you look at Nunez, they have to – they have to – they can't just pay lip service to that. If it's a material fact and if the fact, if believed, would entitle you to relief, there has to be some kind of hearing. If there's not an evidentiary hearing, the fact is just some fact that the Federal court can look at or not, and it's not a fact that's entitled to deference, and it's certainly not entitled to a presumption of correctness. And that's the point I want to make, because if you look at all these claims – but before I'm done, let me just list what the five claims are. I may be coming to the end of my time here. But first one, didn't establish the alibi. That's the Palmer thing. Second one, didn't show that another person committed offense. That's what we've been talking about here. Third one, that there was a similar BMW in the neighborhood that was running and that looked exactly like this one, and that this guy, Rick Adams, loaned to this guy who did commit this offense. Fourth, that the client wasn't informed that this was a three-strikes case. Counsel didn't know it wasn't – that it was a three-strikes case. In fact, he tried to make motions to, you know, to declare it not a three-strikes case. Those were frivolous. It was a three-strikes case. And so the – Is there a Federal issue there? Does one have a constitutional right to plea bargain? Hill v. Lockhart, it's all covered there. You don't have a – plea bargaining isn't in the Constitution, but Federal law holds that once the lawyer starts to advise the client with regard to the facts in terms of a plea bargain setting, he has to do that confidently. Was a plea bargain ever offered this man? 14 years. And he turned it down and got 47. So that's the prejudice. That's the ineffective assistance claim on the plea bargain. Yes, sir. I'm just listing these claims. Okay. All right. You're just listing mine. Yeah. And then the next one is that he didn't obtain the informed consent of the client not to testify. You have to tell the client that even if I have tactical reasons for you not to testify, your right to testify trumps that, and he never told him that. And if he had, he would have testified. On that one, there was a credibility finding as well, was there not? Yeah, exactly. On every one of these. But it's the same issue. In other words, the same principle would apply to each of them. Same principle. Each one of these has a central credibility issue that's being made, a determination that's being made by the State court. And I'm saying that you can't give those facts, the deference under AEDPA because they're not AEDPA-type facts. They go back to the old Townsend v. Sane stuff because, you know, AEDPA isn't triggered unless there was a failure to diligently seek that evidence. And you say there was a State statute that said that by alleging these facts, he was considered by the trial judge sitting as a law and motion judge. Almost, but it's not a statute. It's the California Supreme Court's pronouncements on habeas corpus. The statutes don't address this, but the California Supreme Court decisions do, and they're all in the briefs. It's quite clear that under the California Supreme Court procedure, which is set out in cases like Romero, you know, the statutes say nothing about this. So they lay it out and they say, all right, here's what we do. Here's how we handle habeas. And the basic principle is, if there is a fact stated which, if true, would grant relief, we either have to have a hearing or we have to have sufficient evidence in, you know, that makes that fact untrue. And then the final issue was the failure to timely present all this on the new trial motion. You know, the court denies, the trial court denies the new trial motion under that very deferential standard of new trial, but they wouldn't look at whether the stuff that was presented was presented late because of ineffectiveness of counsel. Counsel, you're down to less than two minutes. I think you want to reserve. I did, Your Honor. Thank you. Can we do so? Good morning. Excuse me. May I please the Court? I'd like to start with the idea that the ---- Mr. Groh, would you introduce yourself for the record, please? Oh, I'm sorry.  Very good. State Attorney General's Office. Under California law, it is a pleading requirement, and that's what the counsel is relying on in Duval, that if the petition alleges certain facts would establish a prima facie case, then the court will remand the case to issue an OSC and remand the case to a superior court for a hearing. It's a pleading requirement. Nonetheless, and I think there's a similar requirement under Federal law, nonetheless, it is clearly State law, and Duval does not affect this, that the defendant's self-serving affidavits do not necessarily entitle him to a hearing on these allegations. That's ---- You think that the defendant should introduce some evidence which are not self-serving? Of course, all proof is self-serving. Well, Your Honor, though, there are cases in Ninth Circuit cases that specifically say the defendant's self-serving, his own declarations, saying, for example, I wasn't advised that this was a three-strikes case, are not ---- they're not so credible that the court is ---- that an appellate court can't reject that. That's Turner and a number of cases. Because they need some corroborative evidence. Absolutely, Your Honor. And in any event, the appellate court can reject those self-serving declarations in the first instance. And the same ---- this is the law in California and has always been. Now, what's your principal case for that? Well, Alvarez has cited it in the briefs. I think it's too ---- All right. That's fine. That might be California law, but does that mean that we have to give it the ---- that we have to respect that fact-finding by the court when we would independently say that if the asserts someone else did it and there's no contravening proof there, a fact-finder cannot just say, well, I don't believe the declaration. Well, Your Honor, I would say that that's the case, but it doesn't really matter in this case because there are facts that controvert the defendant's declaration. For example, the defendant declares, I was never informed that this was a three-strikes case, and the defense counsel didn't know it was a three-strikes case. Well, the preliminary hearing transcript that's attached to the record on appeal here shows the defense attorney stated right there on the record he did not ---- this is talking about the prosecutor. He did not make an offer that this is a three-strikes case. Well, in that circumstance, the court of appeal could certainly look at that transcript and go, well, he says he didn't know it's a three-strikes case, but he's present at the preliminary hearing when the offer is made, and there's the statement. So there is contravening evidence. The other one is that, hey, I told my attorney about this third party that did it. Well, at the second motion for new trial, the defense attorney says this is newly discovered evidence. We just found out about Villanueva. And this is when he's discussing the Monaco-Lopez. Why can't he have alternative, you know, pleadings in that regard? He could plead it either way if he wants. It's not necessarily inconsistent. Well, Your Honor, he's making a factual representation to the trial court that he didn't have this information. It's not a pleading issue. He's saying, I didn't ---- Your Honor, this is newly discovered because I didn't have this information. Doesn't he also have to prove that the new information could not have been discovered with reasonable diligence? Perhaps he does, Your Honor. But in this case, he specifically told the court, I did not have this information. And so the court ---- But his client did. Excuse me? His client did. Well, that's only if you believe his client's self-serving affidavit. And as this Court has ---- Well, you can use his affidavit if it's an admission against interest, certainly. I mean, he knew. You see, my point, it seems bizarre to me that one can make a motion for new trial on the idea that Villanueva did it when Perez knew that Villanueva did it before the trial. Well, so he says he did. And he didn't say it to his attorney because Villanueva extracted a promise. One could find that in honoring that promise, Mr. Perez was not exercising due diligence for his own cause. That's true, Your Honor. But even more so, one could find, and the appellate court did find, that this declaration is not worthy of belief. And this Court has done that in Turner and a number of other cases. So to say that there are factual findings with no evidentiary hearing is simply not the full picture here. This Court ---- I believe the United States Supreme Court has said self-serving affidavits from a defendant long after the trial are inherently suspect. So certainly the State courts can do that. The other issue here is counsel takes these so-called credibility findings and runs with them. But the fact of the matter is that the appellate court found that the allegations the defendant made, even if established, would not prove a prima facie case of ineffective assistance. Well, the allegations, Your Honor, were ---- we're talking about specific allegations. I'm not talking about ---- we're saying, well, he ---- witness Parma, for example, says, well, if I had been asked this question, I would have said that I was with the defendant until 8 o'clock. Well, that witness testified. That witness testified at trial and had an opportunity to say I was with him until 830, and she didn't give that testimony. So that, I assume, those are the allegations, not this general allegation that somebody else did it and I was denied effective assistance at counsel, but the specific allegations that the appellant made. Counsel, Mr. Russell made reference to Taylor v. Maddox, and unfortunately I don't have that case. Apparently I still haven't gotten the 28-J on it. But what is your interpretation of that case in light of the representations that we've heard from Mr. Russell? Well, Taylor v. Maddox did not purport to repudiate the rule in this Court and in the State courts that a defendant self-serving allegations automatically entitle him to an evidentiary hearing in a habeas matter. It did not. Taylor v. Maddox did make some passing comment that if the true fact finding by the State court, if that occurs without affording the defendant an opportunity to present his allegations or to present his evidence, that that is not entitled to a presumption of correctness. Well, now apply that to this case. Well, in this case, though, this wasn't the defendant had an opportunity to present his allegations. He did so in a number of declarations, but the significant one was the defendant self-serving inherently contradictory declaration. And I just wanted to quote the Court of Appeal that says there's simply nothing in the record before us that would indicate that the flaws in an appellant's claim could be cured by further evidence produced at a trial court hearing or an evidentiary hearing. How about a similar BMW? What contradicts his position that there was another BMW? Well, Your Honor, it didn't matter. The Court of Appeal was saying basically the fact that there's a similar BMW around there in the area isn't admissible at all under State law and probably not under Federal law. It has to be some tie to this BMW and the crime. All they have is that Rick Adams owns a black BMW and happened to be driving in the area sometime in April of 95. Well, it shows that the defendant's, the petitioner's BMW was not in the area if it was another BMW. Well, Your Honor, I certainly think the State was within its discretion in deciding that the fact that there's a similar car in the area is not sufficient evidence of third-party guilt and certainly isn't sufficient to establish. No, no, no. You're not stating it fairly. The proof is that he was in his BMW and his BMW was seen in the area and that the shots were fired from his BMW. Now, if the proof is that his BMW, that it was some other person's BMW that was there, not his, does that show some exculpation of his involvement? Your Honor, the proof is not that it's not his BMW but someone else's.  Not that it was this BMW with this particular license plate was on that street. It was there was a blue BMW in the area. Wasn't that other BMW tied to Villanueva? Not at this time. He's saying counsel was ineffective for failing to present this record, this evidence. Counsel told the court I didn't have this information and he had nothing to tie it. But let's suppose the other blue BMW was tied to Villanueva who had confessed. That becomes corroborative evidence that some other person did the crime. Well, the fact that Villanueva confessed would be corroborative evidence. The fact that there's a blue BMW in the area certainly isn't, Your Honor. If the blue BMW is tied to Villanueva, that buttresses his confession, doesn't it? That's true, Your Honor. That begs the question that there was a confession, that counsel had any information about this third party. They didn't. Counsel, all that counsel had was the defendant says that there's a blue BMW in the area. There was no evidence tying the blue BMW until much later, in fact, until the defendant files a rebuttal affidavit in the court of appeal. The fact of the matter was the court of appeal said just the evidence that there is a blue BMW was not even admissible. There was nothing to tie it to the killing at this case, the shooting at this point. In theory, there could have been five BMWs in the area. Absolutely, Your Honor. And without Villanueva, and without that testimony, it's irrelevant. And that's basically what the court said. It's irrelevant that there happened to be a similar car in the area. Well, yes, it might be irrelevant, but once you get Villanueva's confession in, it becomes relevant. But the court found, based on the trial court, the trial defense attorney's statements, that this information was not available. It wasn't the first evidence that there was, that the defense, the defendant had told his attorney about Villanueva was in a rebuttal affidavit filed in the court of appeal. There were three motions for new trial. And in the second one, the defense attorney said, this is new evidence to me. We just found out based on Monica Lopez's declaration. So the court said, as to the BMW, that's irrelevant. As to the confession of Villanueva, that did not come forward until appeal, in fact. And the only evidence that it, that counsel was told about this was a rebuttal affidavit that the court of appeal found was self-serving, was inherently contradictory, and was contrary to what the trial. So there couldn't have been ineffective assistance of counsel by Mr. Nico if Mr. Perez hadn't told him about Villanueva. Absolutely, Your Honor. That's your point. And this is not a situation where there's a credibility finding just based on I don't believe this defendant. Although I believe that under federal law and under state law, that's perfectly permissible. In this case, there was substantial, probably much more credible evidence from the trial attorney saying, or statement saying, I didn't know about this. Ultimately, and counsel says that all of these issues are tied to credibility findings, the court of appeal found that there was no prima facie case. The court of appeal found that the defendant's affidavit was self-serving, contradictory, and not worthy of belief. The court of appeal also found that the other substantive affidavit was from a witness who had testified, and her subsequent affidavit was essentially contrary to her testimony. Basically, this witness testified that, or stated in her declaration some two years later, now she remembers the specific times and the specific locations on that evening. And yet, two years earlier at trial, she, and it's quoted in the briefs, told or testified she couldn't remember. It was unclear. And that that's on the record. And under those circumstances, the court of appeal certainly can look at the testimony and look at the declaration and say, this is not credible. And even if it weren't. As a matter of law. As a matter of law. For purposes of granting an evidentiary hearing. And even if this testimony were, even if she were allowed, if you were granted a new trial and she testified at the second trial, the fact that she's given contrary testimony. One more question. If the court of appeal can disdain the affidavits as not credible as a matter of law, do we review that ruling de novo? No. That is presumptively correct. Even though the evidence wasn't given. In the hearing. I think that it's presumptively correct for the state court to determine that a declaration from the defendant is self-serving, inherently incredible, contrary to the other evidence that became the case. And I think that there are Federal cases, as I say, Turner, that say the same thing. And the reason for that is the defendant would get an evidentiary hearing every time. He would automatically be entitled to an evidentiary hearing every time he signed an affidavit that said, I wasn't advised of this right. Or this witness didn't show up. And that simply is not the law. That's not the law in Federal court and it's not the law in State court. Well, how about a Fifth Amendment right? There's nothing in this record that gainsays his allegation that he was not told he has a right to testify and refused to testify. Well, yes, there is, Your Honor. The court of appeals finding in that regard, and again, this is not simply a credibility finding, the court of appeals finding was based on a letter the defendant sent to his trial attorney in which he said he wanted to testify but his trial attorney advised him not to. And again, this is the same sort of situation where he signs one declaration saying one thing and then when it's controverted or attacked by a Respondent, then he signs a new one that adds more meat to it so that he can try to get his evidentiary hearing. But the law is clear. A criminal defendant's right to testify is tested at the time the State closes its evidence. And at that time, when the defense puts on its case and the defendant is not going to testify, every criminal – I've seen a lot of criminal cases, defense counsel either stands up in front of the court and puts on a record, my client has elected not to testify outside the jury's hearing, or if it's not done, the court judge says, Mr. Jones, is your client going to testify? And the lawyer might even ask the client to stand up and say, I'm not testifying. But there's nothing in this – and that – your right not to testify is at the end of the government's case, not a few months before it goes to trial. A lot of people decide not to testify and then change their mind after they hear the government's case. Well, Your Honor, first of all, there's no constitutional requirement, certainly no U.S. Supreme Court requirement that the trial attorney protect himself by having a – making a showing that he's advised his attorney or his client and his client has declined to. But in this case, if your client says – But if you want to protect yourself, too, if you want to protect yourself against an ineffective claim. That's exactly what you do. Well, Your Honor, I agree with you. And if this defense attorney had stood up and said – told the trial judge, we've discussed it and my client has decided not to testify, that would have been great because we wouldn't have had that issue to deal with. Well, that's – you don't have – that's not the right of this case. No, that's not. But that's not required either. Well, what you have in this record that shows after the government closed its case and the defendant put on its case that the defendant elected not to testify. He wrote a letter to his attorney saying – That's – when was that letter? My understanding of the record was that was after the case was closed. After the evidence was submitted, he wrote a letter and said, believe me, I would have testified, but my attorney told me not to. The State court looked at that evidence and found that that was credible and indeed more credible than the subsequent affidavits that the defendant submitted and found that he, in fact, he had not proved a prima facie case of ineffectiveness. Now, if you take that letter as – I'm not too sure that meets the Fifth Amendment – is the Fifth Amendment right. The lawyer is suggesting not to testify is not sufficient. The client has to be told he has the right to testify. I'm recommending that you not. But it's your – it's your life and not mine. That letter does not hold water under the Fifth Amendment. Your Honor. What do you say to that? I say that the State court findings are supported by substantial evidence. There is absolutely no U.S. Supreme Court authority that requires a defendant or the State place it on the record in the trial court. The defendant knew of his rights. You and I are talking, but we're not communicating. I agree with you. But what do you have on this record that the defendant voluntarily gave up his Fifth Amendment right after the government closed his case – the State closed his case? The fact that he tested – he said, believe me, I wanted to testify but was advised not to do so and therefore I didn't do it. The other thing is, Your Honor, there's absolutely nothing in this record until he gets to the court of appeal that this issue even existed. This is not a defendant that's new to the law or unfamiliar with his rights. But he's not exhausted in the State court? This claim is not exhausted? No. It was raised in the State – in the court of appeal, Your Honor, and in the Supreme Court. It was not raised in the trial court. He – this guy had three motions for new trial and filed his own pro per motions challenging a number of things, and nowhere did he suggest, hey, Judge, I didn't know I had a right to testify. Yeah, but the State court didn't decline to adjudicate it because it was waived. Well, that's true. They adjudicated it because they relied on the defendant's admissions or his letter to his attorney saying, I – I was told. And you think that's sufficient on the battle line? I absolutely do, Your Honor, to support the trial – the State court's determination. And I think that, indeed, is entitled to a presumption of correctness.     Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. And, Your Honor, as a – as a practical matter, the fact that the defendant does not raise this until he gets to the court of appeal is an indication to me, is some evidence that his – in fact, he did know he had this right. Well, I agree with you. I think it's some evidence. That's some evidence for an evidentiary hearing, not for a – not for a... No, Your Honor. Then the defendant would be entitled to an evidentiary hearing every time he got up and said, hey, I wasn't advised my right to testify. And so he gets an evidentiary hearing. Or, oh, I wasn't advised that this was a three-strikes case, so he gets an evidentiary. Oh, there's this third-party witness, or this third-party that did it, and he told – he confessed to me, and I told my attorney, and my attorney didn't do anything. I get an evidentiary hearing. That's just not the case. It's not the case in Federal court, and it's not the case in State court. And it's certainly not on the ADPA. Thank you, Counsel. Your time has expired. Mr. Russell, do you have some reserve time? You know, he says over and over again that he didn't raise it until the court of appeal. Well, I've explained why that is. The Superior Court judge flatly refused to hear on the third new trial motion anything about ineffectiveness of counsel. She said, don't tell that to me. Tell it to the court of appeal. So that's why he first alleged ineffectiveness of counsel in the court of appeal. Working backwards, Judge, you're right on. I mean, the Fifth Amendment right is the right to know that you have the right to testify over the objection of counsel. There's absolutely nothing in this record to contravene that. On the BMW, this wasn't just any BMW that happened to look like this BMW. This was the BMW that another fellow named Rick Adams says in Easter of 95, which is when this occurred, I had loaned for approximately three weeks, including Easter time of 1995 when Mr. Perez's assault allegedly occurred, I had loaned my own BMW to a person in the neighborhood named Jose Villanueva. So this isn't just any old BMW. This is a BMW that's tied right in to the facts of the case. One question I have. Yes, sir. To ask you about. On your claim that the client was not advised about a three-strike case and a plea of 14 years was offered, what evidence did the trial court have on the habeas petition that the defendant would have taken that 14 years? Well, you have the defendant's allegation that he would have taken it. You have the fact. Doesn't it require some corroborative evidence? Well, the corroboration, normally you don't have the prosecutor stepping up in court and saying, gee, I don't think this is a three-strikes case, so I'm going to offer this guy 14 years. I mean, that's a heck of a corroboration. I mean, that shows that just what he's saying occurred. The prosecutor offered him a gift. And because counsel didn't know that it wasn't a three-strikes case, he didn't jump on it. That's what you have, and that's fully corroborated in the record. This is not just somebody saying this without corroboration. That's right there in the record. And there's other corroboration from this declaration of Monaco Lopez about the, though in a way the thing occurred. And before I leave you, just let me read this from this rebuttal declaration, because I think with all due respect, Your Honor, there's two declarations here. And in the second more detailed one, the rebuttal declaration, which I indicated to you, the site earlier, it's at 74 to 77 in parentheses. After meeting with Chickenbone, I promptly told Mr. Nico I knew who had shot Hernandez, but that I agreed to give him a year before I would come forward. That's what you said. Then next, a few weeks later, I got a call from Rick Adams, that's this guy, who was incarcerated in San Francisco jail and other charges, was able to communicate me. He told me someone had smoked Chickenbone. Chickenbone got killed. And that knowledge freed me of my promise to give Chickenbone a year, so I told Mr. Nico to come to see me right away. I told him all the details of Chickenbone's confession. He told him. And he told him before the trial. Now, why he didn't bring that up at the superior court was the superior court said in a supercilious fashion, I don't want to hear any IAC. So let's give that to the appellate court. And that's what he did. Then the appellate court holds no evidentiary hearing, makes these findings. The district court holds no evidentiary hearing and makes these findings. And, you know, we're stuck with a case where the guy's never had a hearing. Backing up to the plea bargain, if a criminal defendant has no right to a plea bargain. Yes, sir. How can a lawyer be ineffective if he doesn't relate to the client that, hey, the State has offered me this? Hill v. Lockhart. It's a critical stage in the proceeding. And the Supreme Court has held that there is a right to counsel at every critical stage in the proceeding and that the right to counsel at the plea bargaining stage includes at a minimum. What are you faced with? What are the charges? I agree with you. You're entitled to counsel. It's a plea bargain. Yes, sir. It's a critical stage. So you have a Sixth Amendment right to counsel. Right. My question is a little different. Yeah. What case says that you have a constitutional right to a plea bargain since if you don't have a constitutional right to a plea bargain, how can counsel be ineffective if they don't relate to you? Hey, the prosecutor told me that you could – we could cop a plea to this and – Yeah, I got it. All right. No, you don't have a constitutional right to plea bargain. If they don't want to offer you a plea, they don't have to. Exactly. But when they do, but when they do, then you have to be competently advised to the plea. And that's Hill v. Lockhart. That's the law. All right. Once they make that offer, counsel has an obligation to competently present that offer. He could be Sixth Amendment ineffective. Yes, sir. Thank you, counsel. Thank you. The case just argued will be submitted for decision, and the Court will adjourn. Mr. Chairman, good evening. I'll first be sending a message to the Honorable United States Court of Appeals, and then the hearing will now depart. The Court will now stand adjourned. Thanks, Grace. Nothing like a spirited argument. All right. Let's see what happens here. Well, the good thing is, I don't have to tell you much. There's not a lot. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: O'scannlain, Cowen, Bea